# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| MT. HAWLEY INSURANCE COMPANY, ) ) ) ) ) Plaintiff/Counter-Defendant, ) ) ) vs. ) ) ) ADELL PLASTICS, INC., and DOES 1-25 ) et al. ) ) ) Defendant/Counterclaimant. ) ) ) | Civil Action No. 1:17-cv-00252-JKB |

## DECLARATION OF DANIEL L. ARNOLD, PE, FSFPE

I, Daniel L. Arnold, PE, FSFPE being duly sworn, depose and say:

1.      I am a Maryland registered professional engineer specializing in fire protection engineering and a principal of Seneca Fire Engineering, LLC; a fire protection engineering consulting firm.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would competently testify to them.

1

2.      I received a Bachelor of Science degree in fire protection engineering from the University of Maryland in 1980 and am a Fellow in the Society of Fire Protection Engineers (FSFPE).  Exhibit 1 further outlines my training, education and experience.

3.      Over the course of my career, I have been involved in over 1000 engineering investigations involving fires and/or fire protection-related systems including fire sprinkler systems and have provided expert testimony involving such investigations in federal, state and local court proceedings.

4.      In September 2017, I was retained to review the records related to a fire that occurred on October 4, 2016, at Adell Plastics Inc.'s (Adell) plastics compounding facility located at 4520-4530 Annapolis Road, Baltimore, Maryland.  My review has focused on assessing the evidence developed to date concerning the operational status of the fire sprinkler systems installed in the Adell facility on the day of the fire.

5.      The opinions stated herein are based on my knowledge, education and experience after a review of the documents and information listed in Paragraph 8 below, and a December 1, 2017, site inspection of the Adell facility.

6.      Fire sprinkler systems are designed and intended to control and/or suppress fires in buildings until the fire department arrives to completely extinguish and overhaul the fire. Applicable building and fire codes require fire sprinkler systems for many buildings, including plastic processing facilities like the Adell facility.  Fire sprinkler systems installed in plastics processing facilities are required to be electrically supervised and monitored to provide automatic notice to the fire department upon the flow of water in the installed sprinkler system.

7.      Further, as a required fire safety system, the Fire Prevention Code of Baltimore County requires that Adell's fire sprinkler systems be inspected, tested and maintained in accordance with NFPA 25, *Standard for the Inspection, Testing and Maintenance of Water-Based Fire Protection Systems*.  NFPA 25 is an internationally recognized standard that establishes minimum requirements for the periodic inspection, testing and maintenance of

2

sprinkler systems to verify their operational status and to provide a reasonable degree of certainty that the system will perform when needed.  NFPA 25 specifies that the property owner or designated representative is responsible for assuring that sprinkler systems in their buildings are properly inspected and maintained in accordance with the frequencies and procedures specified therein.  Similarly,  the *National Fire Alarm and Signaling Code* (NFPA 72), is adopted by Baltimore County and outlines the obligations and requirements for the inspection, testing and maintenance of fire detection, alarm and signaling systems.

8.      To conduct my work in this matter, I have reviewed and analyzed the following documents, records and materials:

a.      Baltimore County Fire Department reports, documents and 911 telephone recordings.

b.      Documents produced by Adell Plastics, Alarm Watch/COPS Monitoring, L.J. Broissoit & Sons, Fireline Corporation and Reliance Fire Protection Inc.

c.      Loss Control Status/Survey Reports and related correspondence and recommendations.

d.      Preliminary Report dated February 28, 2017 by Nicholas Nava, P.E., CFEI, Senior Engineer with Exponent.

e.      Preliminary Report dated March 15, 2017 by Frederick W. Mowrer, Ph.D.

f.      Investigative file materials of Exponent and Frederick W. Mowrer, Ph.D.

g.      Deposition transcripts of: Samar Badra, John Bryan, Frank Chenowith, Paul Ferguson (2 volumes), Anna Gavin, Mark Kessler, Donavan Maden, Frank Osei-Tutu; Joseph Overstreet, John Saia, and Detective Tom Scally.

h.      Declarations of Fire Department Chief Fire Protection Engineer John Bryan, Lieutenants David Adkins and John Schreiber, Jr., and Firefighters Matthew Bury, Lukas Melcher, Donald Riley and Ben Singer.

    i.      Declaration of former Baltimore County Police Department arson investigator Det. Thomas Scally, and current Baltimore County Police Officers Tyler Janowitz and Kellen Langelan.

    j.      Declaration of loss control inspector Kwasi Koranteng.

    k.      Premises security video recordings of the Adell premises.

    l.      Investigative photographs taken by the Baltimore County Police Department, Exponent engineers, and Fire Investigator Michael Spadea.

    m.      Short video clip of fire taken by former Adell employee Samer Badra shortly after discovery of the fire in Building 5.

9.      At the time of the fire, the Adell facility consisted of six buildings of varying ages, designated as Buildings 1 through 6. Each building was provided with automatic fire sprinkler protection achieved through the installation of two independent fire sprinkler systems; designated 'Zone 1' and 'Zone 2'. The Zone 1 system protected both Building 5 and Building 6. Zone 2 protected Buildings 1 through 4.

10.      Control valves are installed in fire sprinkler systems as the means to control the supply of water to the system (i.e. turn the supply on or off). Because a closed control valve is the most common cause why a sprinkler system does not perform as intended during a fire, control valves are required to be listed indicating-type valves. Indicating-type valves are provided with an external, visual indicator of the valve's status (i.e. open or closed) such as a rising valve stem or a position flag. A post-indicator valve (PIV) is an indicating-type control valve that is buried underground with its stem and position indicator extending aboveground within a red-colored, tamper-resistant post. The buried PIV's operating wrench is attached and locked to the PIV post.

11.      Each normally open control valve in a fire sprinkler system is required to be secured in its proper full open position by means of a seal or lock and/or electrically supervised by the use of a valve position tamper switch connected to the associated building's fire alarm

4

system. If the position of an electrically-supervised PIV is moved from its proper normally open position, a valve tamper supervisory alarm is transmitted to the alarm panel.  In addition to being provided with locks, the proper (i.e. fully open) position of the PIVs at Adell were intended to be electrically-supervised by tamper switches connected to the Adell fire alarm and monitoring system.  The performance of these tamper switches and the associated event history monitoring report is being analyzed by others and is beyond the scope of this declaration.

12.     PIVs are often installed near the exterior walls of buildings as the means to control the flow of water from underground water mains to fire sprinkler systems within the building.  The sprinkler systems at Adell (Zone 1 and Zone 2) were supplied with water through a connection to the municipal water system with each system equipped with its own exterior PIV.

13.     Due to their critical importance in assuring the availability of water supply to the sprinkler system it serves, NFPA 25 requires that electrically-supervised PIVs be inspected monthly to verify that the valve is in its proper full open position in addition to the locks/seals and tamper switches provided.  There is no indication in the record reviewed that these required monthly PIV inspections were conducted at the Adell facility.  PIVs that are only locked or sealed in the open position but not equipped with electric tamper switches are required by NFPA 25 to be inspected on a more frequent, weekly basis.

14.     Eyewitness accounts, and available security and cell phone videos, revealed that the origin of the fire was inside and towards the rear of Building 5 (farthest away from Annapolis Road) which was protected by the Zone 1 sprinkler system.  In reviewing available security eyewitness videos, the effects from the initial growing fire (i.e. flame, heat, smoke and hot gasses) can be observed to first spread vertically to impinge the Building 5 ceiling where Zone 1 sprinklers were installed and then horizontally along the ceiling area to other building areas, also containing Zone 1 sprinklers.  The initially observed fire spread unabated to completely destroy both Building 5 and Building 6.

5

15.     Responding to 911 calls made by early eyewitnesses, the Baltimore County Fire Department arrived approximately 5-6 minutes after being dispatched but was unable to extinguish or control the advancing fire.

16.     Photographs taken on October 12, 2016, after the fire department-established collapse safety zone (that encompassed the location of PIV 1 protecting Buildings 5 and 6) was lifted, show that PIV 1 was found in the "SHUT" position with its operating wrench stored and held in place with a painted, closed but unlatched padlock. True and correct copies of those photographs are collectively attached hereto, marked Exhibit 2. The wrench's stored position and paint patterns on its padlock indicate that PIV 1 was closed well before the time of the fire and at the time of the fire, and had not been manipulated since the fire.

17.     A "SHUT" PIV 1 would create a complete and total impairment of the Zone 1 sprinkler system by isolating and preventing the discharge of water from that system to control the initial fire in Building 5. The complete impairment of the Zone 1 sprinkler system due to the closed PIV is consistent with the subject fire's spread to destroy both Buildings 5 and 6. In contrast, the PIV in the water supply line to the Zone 2 sprinkler system ("PIV 2") protecting Buildings 1 through 4 -- which survived the fire -- appears to have been open at the time of the fire and closed at some point after the fire was under control. True and correct copies of photographs of PIV 2, servicing Adell's surviving Buildings 1 through 4, with its wrench affixed to the operating nut of that PIV are collectively attached hereto as Exhibit 3.

18.     In addition to PIV 1 being found in the shut position a few days after the fire with its operating wrench still stored and secured, there are numerous other facts and observations that evidence PIV 1 was shut at the time of the fire and was not closed thereafter by some unknown and unreported party. These facts and observations include, but are not limited to:

        a.     Early employee eyewitnesses to the fire in Building 5 (Paul Ferguson, John Saia, Frank Osei-Tutu, Joseph Overstreet and Samar Badra) uniformly testified they saw no water flow, heard no alarms nor observed any other

6

indication of early sprinkler system operation within Building 5 during the fire. Further, additional employee interviews conducted by Det. Scalley at the time of the fire as part of his fire investigation led Det. Scalley to conclude that the automatic sprinkler system in Building 5 did not activate as intended. Det. Scalley's conclusion is consistent with the subsequent deposition testimony of Messrs. Ferguson, Saia, Badra, Overstreet, and Osei-Tutu.

b.   Responding firefighters observed heavy fire and dark smoke coming from the roof of Building 5 both while enroute and upon their arrival on the scene. These observations are consistent with there being no water discharging onto the early fire from the Zone 1 sprinkler system. The competent discharge of water from a sprinkler system onto a fire reduces the fire's heat release rate and, as a result, generates steam which serves to cool and lighten the fire-produced smoke and hot gases. None of these conditions were observed by firefighters responding to the Adell fire or observed in the photographs taken during active firefighting operations by the fire department. To the contrary, Fire Lieutenant Atkins observed heavy smoke and fire inside Building 5 from his vantage point at a roll-up door and Firefighters Bury and Melcher, who entered some 20-30 feet into Building 5 in the vicinity of the fire for a short time -- until interior conditions became unsafe -- only saw dense black smoke. These early and intimate observations made by the first arriving firefighters further demonstrate that there was no water discharging from the sprinkler system overhead in Building 5.

c.   The sprinklers installed in the Zone 1 wet pipe sprinkler system in Building 5 were standard spray, upright sprinklers with solder-type, thermal elements

7

having an operating temperature of 212 degrees Fahrenheit. When a sprinkler on a wet pipe system is sufficiently heated by a fire to its operating temperature (e.g. 212° F), the sprinkler is designed to fuse/open and immediately discharge water to cool and control the fire in the area. Only those sprinklers that individually reach their operating temperature open to discharge water. Pre-flashover flame/ceiling gas temperatures during uncontrolled building fires can often reach 1000 degrees Fahrenheit or more which is consistent with the temperature measured by Lt. Schreiber using a thermal imaging device at the opposite end of Building 5 from where the fire was first observed. From this information, it is clear that the fire in Building 5 was of sufficient size, magnitude and heat release to cause sprinklers in the area to fuse/open and discharge water if water was, in fact, available to the wet pipe system and not prevented from flowing into the system by the shut PIV 1.

d.     Fire department connections are devices required for fire sprinkler systems as a means for the responding fire department pumpers to supplement the supply of water to sprinkler systems through connected fire hoses. Based on my knowledge and the requirements for such connections, the single fire department connection at the Adell site served both the Zone 1 and Zone 2 sprinkler systems. During the Adell fire, Baltimore County Chief Fire Protection Engineer, John Bryan, directed that hoses be connected to the fire department connection to supplement the water supply to the internal sprinklers and to assess whether the fire had spread to Building 4 (Zone 2), adjacent to Building 5. However, upon attempting to discharge water into the

8

connection, Mr. Bryan observed there was no water flowing from the fire truck's pump into the connection indicating that the truck was pumping against a closed valve (i.e. PIV 1). Detecting no water flow through the fire department connection, Mr. Bryan concluded that the fire had not spread to Building 4. This lack of water pumping through the fire department connection, coupled with firefighter Donald Riley's declaration that no one entered the area of PIV 1 before the collapse zone including that area was established early in the fire, is additional clear evidence that PIV 1, servicing the sprinkler system for Buildings 5 and 6, was closed before the fire.

e.      Firefighters Atkins, Bury, Schreiber, Melcher and Singer uniformly reported that they responded to and/or entered Building 5 to fight the fire from the interior within minutes of arrival and did not observe any indication of or effects from any water discharge from the Zone 1 sprinklers installed at the ceiling. While inside Building 5, no firefighter reported any indication that water had discharged or was discharging from the Zone 1 sprinkler system. They observed no water coming from the ceiling area and did not see or feel water on the ground. They did not get wet. They heard no water falling onto their helmets and also did not hear any water motor gong or other audible fire alarm. While visibility was limited, no one saw flashing strobes or other lights that would indicate the activation of a fire alarm in response to a fire.

f.      One of the principal determinants in achieving fire control by an operating sprinkler system is the limiting of the temperature rise at the building's ceiling

9

to prevent structural damage.  To the contrary, in the Adell fire, structural damage and collapse of the roof assembly of Building 5 was observed by fire fighters soon after their arrival which is consistent with no water being discharged from the Zone 1 sprinkler system overhead.  Specifically, first responders Lt. Atkins and Firefighters Bury and Melcher, who arrived on Engine 372, entered the rear of Building 5 in the area of the fire within minutes of their arrival but exited after only a few minutes for their safety after discerning indications of imminent roof collapse of Building 5.  A few minutes later, Lt. Schreiber and Firefighter Singer, who arrived on Truck 5, entered the front of Building 5, on the opposite end from where the fire was first seen, and observed from its second story lunch room, the roof beams of Building 5 sagging and pulling from the walls, and collapsing toward the center of the warehouse.  Lt. Schreiber's thermal imaging device indicated temperatures in excess of 1000 degrees Fahrenheit in the area of the fire.  This fire-induced structural failure of the building indicates that the Zone 1 fire sprinkler system was not operating and discharging water as intended.

g.   An analysis of the installed Zone 1 sprinkler system including both testing its available water supply and an evaluation of the system's designed hydraulic performance concluded there was an adequate supply of water to control the fire originating in Building 5 if the PIV to Zone 1 had been open.  To the contrary, the subject fire originating in Building 5 was not controlled but rather grew unabated and spread to destroy both Buildings 5 and 6.  This lack of fire control is entirely consistent with PIV 1 being closed at the time of the fire.

h.  The location of the Zone 1 PIV was not open and obvious; it was visually obscured by mechanical equipment and a fenced enclosure.  Further, during the fire, the PIV was located within the fire department's designated wall collapse safety exclusion area and there were no reports of any manipulation of the PIV by fire department personnel during or after the fire.

i.  The collapse of the Building 5 roof structure early in the fire clearly resulted in the failure and breakage of overhead Zone 1 piping supported therefrom.  If, in fact, the PIV to Zone 1 was open at the time of the fire, water being supplied to Zone 1 would have then discharged without restriction from these broken pipes.  However, there were no observations of any such flow from any broken pipes in the record.  Further, uncontrolled flow of water from the broken Zone 1 piping, had it occurred, would have diverted available water supply away from the ongoing exterior firefighting efforts by the fire department.

j.  One of the broken sprinkler pipe locations observed after the fire was the 8-inch Zone 1 main supply riser which was cracked and pulled from its floor flange where it entered Building 5 and connected to the underground supply from PIV 1.  True and correct copies of photographs taken by Exponent are collectively attached, marked Exhibit 4.  The floor and pipe flange in the immediate area of the cracked riser was observed covered with sand, plastic resin pellets and other lightweight debris.  If the PIV to Zone 1 had been fully open during the fire and/or anytime subsequent to the Building 5 roof collapse and the resulting cracked riser flange/pipe, a significant volume of water would have flowed from the crack.  This flow of water would have washed and displaced the observed lightweight debris away from its location.

11

Accordingly, the existence of lightweight debris near the Zone 1 broken riser

floor flange further supports the determination that that PIV to Zone 1 was

closed at the time of the fire and thereafter.

19.     From available photographs, after the fire was extinguished in Buildings 5 and 6,

the collapsed Zone 1 sprinkler system piping, including the Zone 1 sprinkler riser was discarded

and hauled-off by Adell's contractor (Excalibur).  This destruction of evidence, including the

Zone 1 riser components (e.g., the alarm valve trim piping and components) makes it impossible

to assess whether such physical evidence would provide further information relative to the

operation of the Zone 1 sprinkler system or the status of the Zone 1 PIV.

20.     From my review of the documents, records and materials identified above, in my

professional engineering opinion, the Zone 1 sprinkler system did not activate or flow water in

response to the fire that broke out on October 2016 because the PIV serving supplying Zone 1

was closed at the time.  I hold this opinion to a reasonable degree of engineering certainty.  It has

been reached based on information reviewed and work conducted to date.  If my opinion

expressed changes or needs to be supplemented as a result of additional discovery, information

or work, it will be amended as necessary. I have personal knowledge of the opinions stated

herein and, if called as a witness, I would testify thereto.

I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct. Executed this 24th day of April, 2018, at Marietta,

Georgia.

Daniel L. Arnold, P.E., FSFPE

# EXHIBIT 1

**DANIEL L. ARNOLD, P.E., FSFPE**
Seneca Fire Engineering, LLC
Marietta, GA
(770) 587-2444/DArnold@senecafire.com

**EDUCATION:**          **University of Maryland**
Bachelor of Science in Fire Protection Engineering, 1980

**PROFESSIONAL
EXPERIENCE:**

2001 - Present          **SENECA FIRE ENGINEERING, LLC**, Marietta, GA
Principal Fire Protection Engineer

Consulting fire protection engineer.  Fire protection system
design and evaluation.  Building, fire and life safety code
analysis, equivalencies and negotiations.  Property fire
protection condition surveys and audits.  Fire investigation
and litigation/expert support services.

1985 – 2001          **ROLF JENSEN & ASSOCIATES, INC**., Atlanta, GA
Engineering Manager/Vice President

Design, evaluation and consulting fire protection engineering
projects.  Conceptual planning, design in inspection of fire
protection systems including sprinkler, water supply,
standpipe, fire alarm, detection and alarm systems.  Consult
on building code issues related to fire and life safety.

1983 – 1985          **BECHTEL CORPORATION**, Gaithersburg, MD
Fire Protection Engineer

Consulting engineer in areas of fire protection and mechanical
engineering.  Implemented fire protection requirements.
Performed fire hazard analyses including ensuring compliance
with regulatory requirements, postulating fire scenarios and
the evaluation of general plant fire safety.  Developed
conceptual fire protection system design and reviewed
existing systems for modifications.

1982 – 1983          **ROTHFUSS ENGINEERING CORPORATION**
Staff Fire Protection Engineer

Performed fire protection system surveys including as-built
system walkdowns, acceptance tests, preparing operation and
technical procedures, fire brigade training and fire pre-plan
development.  Designed fire protection systems including
detailed drawing development, water supply system
modifications and specifications.

| | |
|---|---|
| 1980 – 1982 | **BECHTEL CORPORATION**, Gaithersburg, MD<br>Systems Engineer<br><br>Designed and specified fire protection systems including automatic sprinklers, fire pumps, water spray and deluge systems, standpipes, halon and fire alarm detection systems. Provided technical guidelines in areas of fire barrier design including walls, floors/ceiling assemblies, fire doors, dampers and penetration seals as well as egress design and general life safety issues. |
| 1980 | **UNIVERSITY OF MARYLAND**, Fire Protection Department<br>Student Research Assistant<br><br>Involved in the expansion of the U.S. Fire Administration's Programmed Planning Guide.  Participated in the development of the final reports submitted to the USFA. |
| 1974 – 1985 | **PRINCE GEORGES COUNTY, MD**<br>Firefighter<br><br>Active volunteer firefighter in large combination department obtaining rank of Lieutenant.  Emergency apparatus operator including mobile fire pumps and aerial ladders.  Duties included commanding units and training recruits. |

**PROFESSIONAL AFFILIATIONS:**

National Society of Professional Engineers, Member
American Council of Engineering Companies, Member
National Fire Protection Association, Member
Georgia Fire Inspector's Association
Society of Fire Protection Engineers, Fellow
    Board of Directors, Executive Committee, Education
      Committee, Membership Committee (Prior service)
Greater Atlanta Chapter, Past Executive Committee
Southeastern Chapter, Past President
SFPE Educ. and Research Foundation, Governor (Past service)
International Code Council (ICC)

**REGISTRATION:**  Professional Engineer

| | | | |
|---|---|---|---|
| Delaware | Tennessee | Indiana | Arkansas |
| Florida | North Carolina | Ohio | Virginia |
| Georgia | South Carolina | Texas | Washington |
| Alabama | Pennsylvania | Mississippi | Oklahoma |
| Illinois | Louisiana | Michigan | Missouri |
| Kentucky | Maryland | | |

Certificate of Competency – Georgia Fire Sprinkler Act
    Georgia Fire Safety Commissioner

**COMMITTEE**
**MEMBERSHIPS:**      NFPA 13, Technical Committee on Automatic Sprinkler
                    System, Installation Criteria, Alternate Member (Former)

                    NFPA 92A, Technical Committee on Smoke Management
                    Systems, Principal Member (Former)

                    Society of Fire Protection Engineers (SFPE), Past Board of
                    Directors, Education Committee, Membership Committee

                    Society of Fire Protection Engineers, Greater Atlanta
                    Chapter, Past President and Executive Committee

                    Commission on Fire Safety and Preparedness,
                    U.S. Department of Energy

## SELECTED SEMINARS & SPECIAL COURSES ATTENDED:

"Basic and Intermediate Fire Fighting, Maryland Fire and Rescue Institute

Numerous short courses on various fire service subjects

"Foam Systems Seminar," National Foam

"Construction Scheduling Seminar," Maryland Society of Professional Engineers

"Fire Protection for Power Plants," Bechtel Power Corporation

""Enclosure Fire Hazard Analysis," Dept. of Fire Protection Engineering, Univ. of MD

"Flashover Seminar", Society of Fire Protection Engineers.

## SELECTED TECHNICAL PAPERS, PUBLICATIONS AND SPEECHES:

"Computer Support System for the Programmed Planning Guide," United States Fire
Administration, Watts, Arnold and Milke, 1981

"Emerging Technology and Fire Protection," Atlanta, Georgia, April 1991

"Sprinklers and Glazing," Society of Fire Protection Engineers, Southeastern Chapter,
1991.

"Fire Protection Systems Piping," *Piping Handbook*, 6th Edition, 1992

"Failure of a Sprinkler System: A Case Study," *Fire Protection Engineering,* Issue No. 21,
Winter 2004

Suppression System Failures: Fire Safety Conference, SFPE SE Chapter, 2005, 2010

Impact of Fire Barrier Maintenance on FD Operations (A Case Study), Fire Safety
Conference, SFPE SE Chapter 2017

# EXHIBIT 2



SPADEA 791

2016/10/12

SPADEA 792



2016/10/12

SPADEA 793



2016/10/12

SPADEA 794



2016/10/12

SPADEA 798



2016/10/12

SPADEA 799



2016/10/12

SPADEA 800



2016/10/12

SPADEA 801



SPADEA 802



2016/10/12

SPADEA 803



2016/10/12

SPADEA 804



2016/10/12

SPADEA 794

EXHIBIT 3



2016/10/12

SPADEA 787



SPADEA 788



SPADEA 789



SPADEA 790