IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MT. HAWLEY INSURANCE COMPANY, an Illinois corporation authorized to transact business in Maryland, | ) ) ) ) ) | |
| Plaintiff / Counter-Defendant | ) ) | |
| vs. | ) ) | Civil Action No. 1:17-cv-00252 |
| ADELL PLASTICS, INC., a Maryland Corporation, | ) ) ) ) | |
| Defendant / Counterclaimant | ) ) | |

**ADELL PLASTICS, INC.'S REPLY IN SUPPORT OF ITS
DAUBERT MOTION TO EXCLUDE DANIEL ARNOLD**

Adell Plastics, Inc. has moved to exclude Mt. Hawley Insurance Company's fire expert, Daniel Arnold, on three bases: (1) that his opinions concerning the operation of Adell's sprinkler system on the day of the fire should be excluded as unreliable because he failed to consider plainly relevant data, *see* Fed. R. Evid. 702; (2) that his opinion concerning the PIV #1 padlock should be excluded as unreliable because he is not qualified to render such opinion testimony, *see* Fed. R. Evid. 702; and (3) that his testimony would be needlessly cumulative, *see* Fed. R. Evid. 403. Mt. Hawley has opposed the Motion with 33 pages that are, for the most part, irrelevant rhetoric intended to distract from the inescapable conclusion that Mr. Arnold's proposed testimony should be excluded because it would be unreliable and needlessly (not to mention, prejudicially) cumulative. Mt. Hawley has not sustained its burden to show otherwise.

**I.      Mr. Arnold's Opinions About Adell's Sprinkler System on the Day of the Fire Are
          Unreliable, and They Should Be Excluded.**

Mr. Arnold failed meaningfully to consider the sprinkler system tamper switches and Monitoring Logs on the day of the fire as required by the methodology he claims to have utilized

1

– National Fire Protection Association 921, *Guide for Fire and Explosion Investigations* – and this renders his opinion unreliable for evidentiary purposes. *See* Motion at 6; Ex. 1 (NFPA 921) at § 4.

Mt. Hawley objects that Mr. Arnold "has repeatedly referenced having relied on the Fireline and AlarmWatch productions, including the event histories, and all other documents provided to him in developing his opinions and conclusions." Opp. at 8-9. But "referencing" something, and actually evaluating its substance and import are not one and the same. In fact, Mt. Hawley's brief demonstrates that Mr. Arnold never actually analyzed or specifically relied upon the Monitoring Logs or tamper switches, as required by his methodology (NFPA 921).

First, Mt. Hawley points to the list of sources Mr. Arnold relied on in his declaration and expert report to establish that "he reviewed all documents produced by AlarmWatch and Fireline." Opp. at 9; *see also* Opp. at 10. But "[t]he identification…of data does not equate to data analysis" under NFPA 921. *See* Ex. 1 (NFPA 921) at § 4.3.4. In fact, the undisputed facts show that Mr. Arnold *did not* analyze the Monitoring Logs personally, and Mt. Hawley admits that he merely "deferred to … Mr. Willms' analysis of the AlarmWatch Raw Data Report and Automation Report" in his expert report. Opp. at 10; *See, e.g.*, Opp. at FN 3 ("Q: Did you do any analysis…with respect to the….monitoring logs? A: I didn't conduct any testing, do any exemplar testing, didn't review catalogs, the raw data."); Opp. at FN 4 ("Q: The performance of these tamper switches and…monitoring report is being analyzed by others is beyond the scope of this declaration. A:…I didn't analyze the specific history report, but I am familiar with the context of it in my overall declaration.").[1]

---

[1] Similarly, Mt. Hawley incorrectly claims that Mr. Arnold "analyzed" the PIV #1 tamper switch when he witnessed the tamper switch being "removed, documented and preserved as evidence" during the December 1, 2017 site inspection. Opp. at 14. However, merely "gathering[] and cataloging…data does not equate to data analysis" under NFPA 921. Ex. 1 (NFPA 921) at § 4.3.4. NFPA 921 requires actual "analysis of the data" and that the investigator "understand the

Second, Mt. Hawley submits that Mr. Arnold's reliance on Mr. Willms' analysis of the Monitoring Logs is sufficient under NFPA 921. *See* Opp. at 10-11. This is incorrect. As an initial matter, NFPA 921 does not permit an investigator to simply abdicate a portion of his data analysis to another. NFPA 921 only permits an investigator to seek "***assistance***" "***if the investigator lacks expertise*** to properly attribute meaning to a piece of data." *Id.* (emphasis added). Here, Mr. Arnold testified that he was capable of conducting the analysis that Mr. Willms performed in this case, but did not do so. *See, e.g.*, Ex. 2 (Arnold Dep. Tr.) at 83:4-84:3, 87:3-88:6, 93:16-94:19 ("I don't want to get too much in to [sic] Mr. Willms, who really went down into detail in this matter relative to raw data, I haven't done that. I'm familiar with it, ***it's part of what I do but I didn't do it in this case.***" (emphasis added)). Mt. Hawley's desire to have another person analyze the monitoring log data, rather than having Mr. Arnold conduct a complete and fulsome analysis, is not a valid basis for deferring to another under NFPA 921.

Mt. Hawley's misreading of NFPA 921 also ignores more fundamental requirements of *Daubert* and the Federal Rules of Evidence. An expert's testimony must be the product of reliable principles and methods. *See, e.g.*, Fed. R. Evid. 702. This requirement is not met when an expert simply adopts the opinions of another without taking any affirmative steps to confirm the reliability of those opinions or the methodology used in formulating them. *See, e.g.*, *In re TMI Litig.* 193 F.3d 613, 715-16 (3d Cir. 1999) (excluding an expert who blindly relied on the opinions of others without making any attempt to assess the validity of their assumptions and opinions); *U.S. v. Batchelor-Robjohns*, No. 03-20164, 2005 WL 1761429, at *5 (S.D. Fla. June 3, 2005) ("[A]n expert may not blindly rely on the conclusions of another and still meet the reliability requirements of Rule 702 and *Daubert*."); *Therasense, Inc. v. Becton, Dickinson & Co.*, No. 04-02123, 2008 WL

---

meaning of the data" when formulating his hypothesis. *Id.*

2323856, at *1 (N.D. Cal. May 22, 2008) ("One of the worst abuses in civil litigation is the attempted spoon-feeding of client-prepared and lawyer-orchestrated 'facts' to a hired expert who then 'relies' on the information to express an opinion…. The source is almost always highly partisan, such as the client *or another forensic witness on retainer*." (emphasis added)).

Here, Mr. Arnold neither supervised Mr. Willms' work to assess the reliability of his methodology nor conducted any independent analyses to assess the reliability of his opinions. Dkt. 164 Ex. A (Arnold Dep. Tr.) at 94:20-95:2 ("Q. So you are relying on Mr. Willms to analyze the raw data for the monitoring log?  A.  I think he did.  I didn't independently do that.  I'm familiar with it, but it wasn't a focus of my work."); *id.* at 95:20-22 ("Q. You weren't responsible for supervising Mr. Willms's work in any way?  A. *No.* We work independently." (emphasis added); *id.* at 96:1-6 ("Q.  Did you do any analysis at all of your work, in formulating opinions with respect to the panel and the wiring and the monitoring logs?  A. *No.* I didn't conduct any testing, do any exemplar testing, didn't review catalogs, the raw data." (emphasis added)).

Instead, Mr. Arnold blindly relies on Mr. Willms and presumes for purposes of his own analysis that the monitoring logs do not show what they show.  The monitoring logs go directly to Mr. Arnold's "principal opinion" in the case and the failure to analyze the data renders his testimony thoroughly unreliable.  Ex. 2 (Arnold Dep. Tr.) at 80:11-22 (principal opinion that the "PIV was closed at the time of the fire" and admitting that all his subsequent opinions build on that premise); *see also, e.g.*, Dkt. 164 Ex. A (Arnold Dep. Tr.) at 91:5-93:20 (admitting that the movement of an electronically monitored PIV sends a signal to the alarm monitoring company and that such companies maintain monitoring logs that are useful for reviewing the history of such signals).

In sum, Mt. Hawley – which has the burden of persuasion as to Mr. Arnold's suitability as

an expert – has not established that his opinions are sufficiently reliable to go forward.  To the

contrary, the gaps in Mt. Hawley's analysis confirm that Mr. Arnold's analysis ran afoul of his

methodology (NFPA 921), and thus is unreliable.

**II.      Mr. Arnold is Not Qualified to Render Opinion Testimony About The PIV #1
          Padlock; Thus, Such Testimony Should Be Excluded.**

Mr. Arnold proposes to opine that PIV #1 must have been closed before October 4, 2016,

based in part on his analysis of the paint pattern depicted in photographs of an unlatched painted

padlock for PIV #1.  That opinion testimony should be excluded as unreliable because (1) Mr.

Arnold is not qualified to render expert testimony based on his observation of paint patterns, and

(2) the photographs of the padlock were taken eight days *after* the fire.  *See* Motion at 11.

Mr. Arnold plainly lacks the expertise needed to render such opinion testimony.  *See*

Motion at 10; *see also* Fed. R. Evid. 702.  Indeed, Mt. Hawley admits that Mr. Arnold "does not

claim to be" a forensic investigator of paint patterns, and Mt. Hawley offers no suggestion that he

has any specialized expertise or qualifications in the analysis of paint patterns.  Opp. at 25.  Instead,

Mt. Hawley suggests that ***no expert is needed*** to examine the paint patterns on the lock, arguing

that "[t]o ***anyone*** who sees these photographs…it is clear that PIV #1 was untouched during the

fire….  This is evident to ***anyone*** who looks at the photographs…"  Opp. at 24 (emphasis added).

Paradoxically, not even the investigator that took these photographs agrees with that assessment.

Mt. Hawley's fire investigator, Michael Spadea, has admitted under oath that his photographs

provide no insight into the status of the PIV at a time earlier than when he took them – i.e., eight

days after the fire.  Ex. 3 (Spadea Dep. Tr.) at 135:8-136:16, 139:17-140:2.  The photograph is a

snapshot in time, and no more.

Mt. Hawley cannot have it both ways – either the paint patterns in the photograph require

specialized expertise to interpret (in which case Mt. Hawley concedes Mr. Arnold falls short), or

the import of the paint patterns is objectively apparent to a casual observer (in which case Mr. Arnold's testimony, which would carry the imprimatur of an "expert," is not necessary). *See Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990) (upholding the trial court's decision to exclude expert testimony because it dealt with a matter which was within the common knowledge of jurors). *See Doe v. AE Outfitters Retail Co.*, No. WDQ-14-508, 2015 WL 9255325, at \*5 (D. Md. Dec. 17, 2015) (excluding expert's liability opinion because the expert lacked the necessary skill or knowledge needed under Fed. R. Evid. 702).

Equally troubling, Mt. Hawley's brief fails to explain what methodology, if any, Mr. Arnold used to conclude that photographs taken eight days *after* the fire are reliable evidence of the padlock's condition immediately *before* the fire. Instead, it seems that Mr. Arnold simply looked at the photographs and concluded, without applying any reliable principles or methods, that "[t]he wrench's stored position and paint patterns on its padlock indicate that PIV 1 was closed well before the time of the fire…" Opp. at 22. This sheer speculation is not sanctioned by NFPA 921, and is certainly not reliable within the meaning of Rule 702(c).

### III.   Mr. Arnold's Testimony Should be Excluded Because it Would Be Cumulative.

Mr. Arnold is one *six* fire experts designated by Mt. Hawley, and one of *three* fire protection engineers designated to testify to the same opinion, to wit:  that PIV #1 was closed before October 4, 2016. Mt. Hawley vaguely states that "each [expert] has a unique take on the evidence based on their qualifications and experience, including Mr. Arnold's 'boots on the ground' firefighting and firefighter operations experience[,]" but Mt. Hawley has not provided even a single example of what Mr. Arnold's opinion testimony would add to the jury's understanding that one of its five other fire experts would not. Opp. at 27. It bears repeating, for example, that Mr. Arnold admits to having merely adopted Mr. Willms' analysis regarding the Monitoring Logs.

Viewing Mt. Hawley's Opposition most charitably, Mr. Arnold's proffered opinion testimony would provide no more than a cumulative rehash of Mr. Willms' testimony in order to reach the same general conclusion of five other retained experts.  Thus, Mr. Arnold's proposed testimony should be excluded.  *Belk v. Charlotte-Mecklenburg Bd. of Educ.*, 269 F.3d 305, 335 (4th Cir. 2001) (affirming the district court's decision to exclude expert testimony under Rule 403 because it merely provided "a rehashing of expert reports and testimony" which outweighed any probative value).

## CONCLUSION

For the foregoing reasons, Adell respectfully requests that its *Daubert* Motion to Exclude Daniel Arnold be granted.

Dated: May 31, 2019                    BLANK ROME LLP


                                        */s/ John A. Gibbons*
                                        John A. Gibbons (Bar No.  15669)
                                        Omid Safa (Bar No. 20027)
                                        Blank Rome LLP
                                        1825 Eye Street, NW
                                        Washington, DC 20006-5403
                                        JGibbons@BlankRome.com
                                        OSafa@BlankRome.com
                                        Tel: (202) 420-2200
                                        Fax: (202) 420-2201

                                        Mark H. Kolman (Bar No. 00424)
                                        9483 E Ironwood Bend
                                        Scottsdale, AZ 85255
                                        mhkolmanaz@gmail.com
                                        (480) 268-9025
                                        *Attorneys for Defendant Adell Plastics, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2019, a copy of Adell Plastics, Inc.'s Reply In Support of Its *Daubert* Motion to Exclude Daniel Arnold was electronically filed through the Court's ECF filing system and served on the following recipients:

> Andrew T. Stephenson
> Jessica Ayd
> Renee Bowen
> FRANKLIN & PROKOPIK, A.P.C.
> 2 N. Charles Street, Suite 600
> Baltimore, MD 21201
> (410) 230-3638     telephone
> (410) 752-6868     facsimile
> astephenson@fandpnet.com
> jayd@fandpnet.com
> rbowen@fandpnet.com
>
> AND
>
> Michael D. Prough (*pro hac vice*)
> Dean Burnick (*pro hac vice*)
> MORISON & PROUGH, LLP
> 2540 Camino Diablo, Suite 100
> Walnut Creek, CA 94597
> (925) 937-9990 telephone
> (925) 937-3272 facsimile
> mdp@morisonprough.com
> dcb@morisonprough.com

By:____*/s/ John Gibbons*
Blank Rome LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200