IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ADELL PLASTICS, INC., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-17-00252 |
| MT. HAWLEY INS. CO., | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This insurance coverage dispute—arising after a fire demolished several buildings at the Baltimore facility of Adell Plastics, Inc.—continues. Adell was the insured under a commercial property insurance policy issued by the Mt. Hawley Insurance Co. But, in January 2017, Mt. Hawley sued Adell, seeking a declaration that, under its insurance policy, Mt. Hawley owed no coverage, and seeking a recoupment of a substantial advance payment. Adell filed a counterclaim, alleging that Mt. Hawley had breached the insurance contract and had acted with a lack of good faith. Trial is set to begin on July 8, 2019. Pending before the Court are the parties' pretrial motions. In this Memorandum, the Court addresses the seven motions to exclude the testimony of eight expert witnesses. The issues have been fully briefed, and no hearing is required.[1] *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will grant Adell's motion to exclude the expert testimony of Jeffrey W. Stempel and deny the six other motions, pursuant to Federal Rule of Evidence 702.

---

[1] A hearing is not required under Federal Rule of Evidence 702, nor under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993); *see also* Fed. R. Evid. 104(c). "A district court need not hold a hearing if, after being presented with a proposed expert's 'substantial' credentials and training, it concludes '[t]his training and experience amply [qualifies the expert] to give testimony [on the topic for which he or she is being qualified]." *United States v. Young*, 916 F.3d 368, 380 n.5 (4th Cir. 2019) (quoting *United States v. Beasley*, 495 F.3d 142, 150 (4th Cir. 2007)).

## I. Standard of Review

Rule 702 allows a witness "who is qualified as an expert by knowledge, skill, experience, training, or education" to testify "in the form of an opinion or otherwise" if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The district court's role is to ensure "that an expert's testimony both rests on reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93. This basic gatekeeping obligation applies to all expert testimony, not just scientific testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

To be relevant, or helpful, an expert opinion must have a valid connection to the pertinent inquiry. *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019). To be reliable, an "expert opinion must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999). The district court enjoys wide latitude in determining what indicia of reliability it will require in a given case. *See Nease v. Ford Motor Corp.*, 848 F.3d 219, 229 (4th Cir. 2017). Those indicia may include:

> (1) whether a theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its application; and (4) whether the theory or technique enjoys general acceptance within the relevant community.

*Fireman's Fund Ins. Co. v. Tecumseh Prods. Co.*, 767 F. Supp. 2d 549, 553 (D. Md. 2011) (quoting *Kumho Tire*, 526 U.S. at 149–50).

## II. Analysis

Adell moves to exclude six of Mt. Hawley's expert witnesses, and Mt. Hawley moves to exclude two of Adell's expert witnesses, who coauthored a single expert report. The Court assesses the admissibility of each expert opinion in turn.

### a. Mark Newton

Adell moves to exclude the expert testimony of Mark Newton. (Mot. Exclude Newton, ECF No. 161.) Newton is a Certified Public Accountant, who has testified in over 150 cases and who was retained by Mt. Hawley to evaluate the records related to Adell's insurance claims. (Newton Report at 3, ECF No. 161-7.)

Adell challenges the relevancy and reliability of Newton's testimony. Adell argues Newton's testimony is irrelevant because Newton does not attempt to calculate the "actual amount" of damage caused by the fire. (Mot. Exclude Newton at 6.) Adell argues the testimony is unreliable because Newton limited his review to incomplete data, (*id.* at 8), an argument which Mt. Hawley disputes, asserting Newton reviewed the whole record, (Opp. Mot. Exclude Newton at 12–13, ECF No. 185). Adell misunderstands the purpose of Newton's testimony. Newton has employed his accounting expertise to review discovery materials and calculate the loss that Adell has documented. (Newton Report at 3, 7.) Newton readily acknowledges the actual loss may be more than he has calculated:

> I've been asked to address or evaluate the documentation that Adell has produced, and to determine how much of their claimed losses that they're making here I can document. And, so it's far less than what is being claimed—what I've been able to document is far less than what's being claimed. I do think, in my mind, in looking at the documents and reports and so forth that the losses

3

probably exceed what I've been able to document. So I've looked
at what they've been able to support with documentation.

(Newton Dep. at 50:6–17, ECF No. 161-4.)

Newton's testimony is relevant. Adell must prove damages on its breach of contract claim, and Newton's testimony will aid the jury in evaluating Adell's documentation and calculating the documented damages. Newton's testimony is reliable. Newton bases his calculations on the complete record of this case and principles of accounting. *See In re Minh Vu*, Civ. No. DKC-12-3184, 2013 WL 4804822, at *11 (D. Md. Sept. 6, 2013) ("While it is true . . . that the record does not reflect the manner in which [expert's] methodology was tested, subjected to peer review, that there were standards and controls for its application, or that it was generally accepted within her field, forensic accounting is not typically a field in which controversial scientific methods are employed.").

Mt. Hawley has met its burden of showing by a preponderance of the evidence that Newton's testimony is permissible. Adell's motion to exclude Newton will be denied, and Newton will be ordered to attend each day of trial so that his testimony can take into account the evidence admitted at trial. *See, e.g., United States v. Jacobs*, 194 F. Supp. 3d 216, 220 (E.D.N.Y. 2016) (permitting I.R.S. agent to remain in courtroom during tax fraud trial and testify as a summary expert witness as to the total tax loss).

### b. Jeffrey W. Stempel

Adell moves to exclude the expert testimony of Jeffrey W. Stempel. (Mot. Exclude Stempel, ECF No. 167.) Adell moves to exclude on many grounds, including relevance. (Mot. Exclude Stempel Mem. at 11, ECF No. 167-1.) Because the Court agrees that Stempel's testimony is irrelevant, the Court does not address Adell's other grounds for exclusion.

Stempel is a professor of law who focuses on insurance-related issues. (Stempel Report at 1, ECF No. 167-4.) Stempel has testified as an expert before. On those occasions, the courts found Stempel qualified "to testify about general insurance law, customs and practices," *First Specialty Ins. Corp. v. Ward N. Am. Holding, Inc.*, Civ. No. 04-2359, 2006 WL 6225115, at *3 (D. Kan. Nov. 1, 2006), and found his testimony relevant to the extent that he limited his testimony to general insurance law, *see id.* (denying motion to exclude with the caveat "he may not tell the trier of fact what conclusion to reach"); *Dominion Res. SVC, Inc. v. Alstom Power, Inc.*, Civ. No. 16-544, 2018 WL 3752878, at *14 (D. Conn. Aug. 8, 2018) (holding "[Stempel's] testimony will assist the trier of fact in determining a matter in issue, specifically the meaning of the term 'commercial general liability insurance'"). But, at least one court has excluded Stempel's testimony as irrelevant where Stempel's opinion consisted of statements of law and application of that law to the facts. *See City of Phoenix v. First State Ins. Co.*, Civ. No. 15-511, 2016 WL 4591906, at *19 (D. Ariz. Sept. 2, 2016) (holding Stempel's testimony was inadmissible expert opinion because it consisted of legal opinions, assertions of insurance law, and applications of the law to the facts of the case). In that case, like this one, Stempel attempted to opine on the insurer's good faith. *Id.* at *18.

Here, Stempel describes the law and makes various legal conclusions. An expert opinion that "merely states a legal conclusion" is generally irrelevant because it "is less likely to assist the jury in its determination." *United States v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002). A legal conclusion is less likely to assist the jury because a court provides all necessary legal conclusions in the form of jury instructions. *See, e.g., United States v. Chapman*, 209 F. App'x 253, 269 (4th Cir. 2006) ("To the extent that Chapman's experts would testify about whether a fiduciary duty existed, the district court noted that the legal definition of fiduciary duty would be

5

presented to the jury through its instructions and that the testimony Chapman sought to present would therefore amount to an improper legal opinion."). In Stempel's report, he defines "good faith" according to Maryland statutory law. (Stempel Report at 13.) Stempel quotes this Court's assessment of the case law analyzing the Maryland statutory provision. (*Id.* at 14.) Stempel then proceeds to apply the law to the facts in this case and reaches the conclusion that Mt. Hawley did not act with a lack of good faith.

In general, an expert opinion is also irrelevant when it touches on an ultimate issue for trial. *Chapman*, 209 F. App'x at 269. "While expert witnesses may testify as to the ultimate matter at issue, Fed. R. Evid. 704(a), this refers to testimony on ultimate facts; testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." *Sun Yung Lee v. Clarendon*, 453 F. App'x 270, 278 (4th Cir. 2011) (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007)). "The touchstone of admissibility of testimony that goes to the ultimate issue, then, is helpfulness to the jury." *United States v. Perkins*, 470 F.3d 150, 157 (4th Cir. 2006). Here, Stempel tells the jury what result to reach on the lack of good faith issue. Stempel concludes, "it is my opinion that Mt. Hawley's conduct in this matter is consistent with an insurer's duty of good faith and fair dealing and that Mt. Hawley's claims handling in this matter was diligent, fair, and consistent with industry standards, custom and practice." (Stempel Report at 4; *see also id.* at 15, 17.) In describing Mt. Hawley's denial of coverage, Stempel states that Mt. Hawley "had reasonable grounds for denying coverage," "had every right to deny coverage," and exhibited "reasonable conduct" "consistent with insurer duties of good faith and fair claims handling." (*Id.* at 5.) Again, Stempel concludes, "the claims conduct and decision-making of Mt. Hawley met the required standard of care for insurers and was, if anything, unduly generous toward Adell in advancing funds." (*Id.* at 21.) These legal conclusions on an ultimate issue for

6

trial predominate Stempel's report. Rather than assisting the jury by providing specialized knowledge, Stempel seeks to replace the jury entirely.

If Stempel testified in accordance with his expert report, he would "impermissibly invade[] the province of both the judge and the jury." *Peters v. Balt. City Bd. of Sch. Comm'rs*, Civ. No. WMN-13-3114, 2014 WL 4187307, at *8 (D. Md. Aug. 21, 2014). Regarding lack of good faith, Stempel describes both the law and how it should be applied to the facts, leaving no room for a trial on that issue. To the extent that Stempel opines on insurance issues more generally—e.g., "the importance of conditions established by protective safeguard endorsements" or "waiver or estoppel regarding the right to recoupment" (Stempel Report at 10, 16)—his testimony would not aid the jury because the Court has already decided these issues.

The Court will grant Adell's motion to exclude Stempel's expert testimony because Stempel's report shows that his testimony would be irrelevant in that it would fail to aid the jury in reaching a conclusion.

### c. Carl Willms

Adell moves to exclude the expert testimony of Carl Willms. (Mot. Exclude Willms, ECF No. 163.) Willms, the CEO of Fire Safety Consultants, Inc., investigated the Adell fire. (Willms Report at 6, ECF No. 163-9.) Willms also conducted an experiment to interpret a key piece of evidence, the monitoring logs. (*Id.* at 7.) The monitoring logs document the data that emitted from Adell's Silent Knight 5104B panel (which has since been lost). (*Id.*) Willms configured two exemplar Silent Knight 5104B panels to be as similar as possible to Adell's panel and used them in an attempt to recreate the signals recorded in the monitoring logs. (*Id.* at 9.) Based on his investigation and panel experiment, Willms concludes that the fire alarm panel was inoperative at the time of the fire and opines on the meaning of the signals that the fire alarm

panel was projecting. (*Id.* at 33–37.) Willms also examines Adell's compliance with the inspection and testing requirements mandated by the National Fire Protection Association ("NFPA"), (*id.* at 28), and the veracity of Adell's annual inspection reports, (*id.* at 29).

Adell primarily argues that Willms's testimony is unreliable because Willms's exemplar panels were not similar enough to the Adell panel. (Mot. Exclude Willms Mem. at 6–9, ECF No. 163-1.) Mt. Hawley asserts that the exemplar panels were substantially similar to Adell's panel. (Opp. Mot. Exclude Willms at 13, ECF No. 182 ("In order to work properly, there was only *one way* to wire the panel to the alarm system monitoring devices.").) The report details that, to replicate the Adell panel configuration, Willms bought an identical panel and hooked it up to the same type of receiver. (Willms Report at 9.) Willms is also transparent about the limitations of his panel experiment. Willms's admission that he could not reproduce certain signals that emitted from the original Adell panel is helpful information for a juror, who will need to assign weight and meaning to the monitoring logs. (*Id.* at 13.) Mt. Hawley has shown Willms's expert opinion to be sufficiently reliable for admissibility.

Adell argues that Willms's testimony would not aid the jury. Adell asserts that Willms "assumes facts inconsistent with the record," (Mot. Exclude Willms Mem. at 9), but the facts that Willms allegedly assumes are those facts that Adell and Mt. Hawley continue to dispute, e.g., whether the post-indicator valve was open. Adell asserts that Willms's references to "third parties," like Fireline and AlarmWatch, are not relevant because any negligence on their part is irrelevant to determining Adell's liability, (*id.* at 13), but the actions of such "third parties" are relevant to the issues here. Adell retained Fireline to inspect, test, and repair its protective safeguard devices, and Fireline subcontracted with Alarmwatch to perform monitoring services. (*Id.* at 12; *see also* Memo. Op. at 4, ECF No. 134.) Because Adell contracted with Fireline to

inspect its protective safeguards, interactions between Adell and Fireline and Fireline's subsequent actions speak to Adell's diligence in maintaining them in "complete working order."

In fact, the relevance of Willms's testimony cannot be overstated. The parties have often debated the meaning of the monitoring logs, arriving at a stalemate, which Willms's testimony has at least some potential to end. *Kopf v. Skyrm*, 993 F.2d 374, 377 (4th Cir. 1993) ("Rule 702 is broadly interpreted, and helpfulness to the trier of fact is its 'touchstone.'").[2] Because the Court concludes that Willms's testimony is reliable and relevant, the Court will deny Adell's motion to exclude Willms's expert testimony.

### d. The Fire Protection Engineers

Adell moves to exclude the expert testimony of three fire protection engineers: R. Thomas Long, Daniel L. Arnold,[3] and Frederick Mowrer. Mt. Hawley moves to exclude the expert testimony of two fire protection engineers: Richard Roby and Michael Klassen. After carefully reviewing each report and the parties' argument as to why testimony should be excluded, the Court declines to exclude the witnesses at this time.

Each expert bases his investigation and conclusions on the standards of fire investigation as set out in the NFPA Guide for Fire and Explosion Investigations ("NFPA 921"). The parties agree that NFPA 921 constitutes the generally accepted standards of fire investigation. *See Fireman's Fund Ins. Co.*, 767 F. Supp. 2d at 554. Chapter Four of NFPA 921 outlines the scientific method of conducting a fire investigation. In broad strokes, a fire investigator complying with Chapter Four will define the problem; collect data; analyze all data collected; develop a hypothesis based on the empirical data and inferences drawn from the data and the

---

[2] *Kopf* was decided a month before *Daubert* but is consistent with *Daubert*'s construction of Rule 702.

[3] Although the motion to exclude refers to "David," the expert's name is Daniel, which Adell concedes in Reply. (Reply in Supp. Mot. Exclude Arnold, ECF No. 197.)

investigator's knowledge, training, or experience; test the hypothesis; and, reach a conclusion. (NFPA 921, ECF No. 162-5.) As fire protection engineers investigating the Adell fire, their testimony is relevant to whether the sprinklers were maintained in "complete working order." The question is whether their testimony is sufficiently reliable according to NFPA 921 standards upon which they have all relied.

Adell moves to exclude Long's expert testimony, (Mot. Exclude Long, ECF No. 162), Arnold's expert testimony, (Mot. Exclude Arnold, ECF No. 164), and Mowrer's expert testimony, (Mot. Exclude Mowrer, ECF No. 166). Adell makes the same principal argument against all three: the testimony is unreliable because the experts failed to analyze the monitoring logs and, thus, failed to analyze all credible data pursuant to NFPA 921. (Mot. Exclude Long Mem. at 4, ECF No. 162-1; Mot. Exclude Arnold Mem. at 6, ECF No. 164-1; Mot. Exclude Mowrer Mem. at 7, ECF No. 166-1.) Mt. Hawley overcomes this challenge by showing that its experts reviewed the entire record, including the monitoring logs, as evidenced by the reports, depositions, and declarations of the experts.

Adell makes specific challenges to poke holes in the experts' methodology. Regarding Long, Adell argues that one of Long's tests is unreliable because it examined sprinkler reactions to fires under different conditions than those at Adell, but Mt. Hawley asserts that the conditions were reasonably similar. This dispute is fodder for cross-examination, but it does not establish Long's report as unreliable. Regarding Mowrer, Adell challenges the use of example videos of fires. These videos show how sprinklers respond to fires like Adell's fire or even stronger ones. Mowrer acknowledges that the fires are not identical. Once again, Adell may raise this objection in cross-examination. This is a fire insurance case, and fire protection engineers must be allowed to testify and illuminate the circumstances of the fire. The same will be said of Adell's experts.

The Court turns to Mt. Hawley's motion to exclude. (Mot. Exclude Roby & Klassen, ECF No. 171.) Mt. Hawley argues that the totality of the errors in the joint expert report of Roby and Klassen show its unreliability in contravention of NFPA 921. (Mot. Exclude Roby & Klassen Mem. at 1, ECF No. 171-1.) They principally argue that Roby and Klassen did many tests but only included one in its report, the one about how long it would take the sprinklers to deploy. (*Id.* at 7–9.) In addition, Mt. Hawley asserts that some of their conclusions are pure speculation: e.g., the possibility of delay in sprinkler activation, the status of the structural steel in Building 5, etc. (*Id.* at 18–34.) These, like Mt. Hawley's other arguments, are valid criticisms of Roby and Klassen. Valid criticisms of an expert's report do not necessitate the exclusion of the expert opinion in its entirety. *See, e.g., Newman v. State Farm Fire & Cas. Co.*, 290 F. App'x 106, 115 (10th Cir. 2008) (holding expert testimony sufficiently reliable even though expert never determined the cause of the fire and conducted experiments under different conditions from the fire because "there was no practical way to actually recreate the fire"). To the extent that Roby and Klassen cannot support their conclusions, those conclusions will not be admitted at trial. But, the Court concludes that Roby and Klassen sufficiently base their report in methodology and evidence—however disputed—to be admissible.

The expert opinions of the fire protection engineers for both sides get to the heart of the issue for trial: whether Adell maintained its sprinklers in "complete working order." The Court will allow them to testify so long as they testify in accordance with the methodology they have chosen, namely, NFPA 921. As in other cases involving multiple experts, testifying with contradictory evidence and opinions, it will be "for the jury to decide which expert to believe." *Id.* at 115. Adell asserts that the experts will provide cumulative testimony. If it becomes apparent at trial that expert testimony is cumulative, the Court will exclude that testimony.

11

**III. Conclusion**

In permitting the six experts to testify, the Court notes that it does not conclude that the expert testimony is irrefutable or correct. *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). Rather, the Court expects the parties to challenge these experts with "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Id.* (quoting *Daubert*, 509 U.S. at 596).

For the foregoing reasons, an Order shall enter granting Adell's motion to exclude Stempel's expert testimony and denying the other motions to exclude.

DATED this _18_ day of June, 2019.

BY THE COURT:

_____
James K. Bredar
Chief Judge